# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARLAND MOORE,          :
          :     Civil No. 3:12-CV-2352
      Plaintiff     :
          :     (Judge Kosik)
v.          :
          :     (Magistrate Judge Carlson)
MARY SABOL, et al.,     :
          :
      Defendants    :

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

In its current form this case presents a singular set of circumstances. The *pro se* plaintiff, an immigration detainee held at the York County Prison, has sued his jailers, and Prime Care, Inc., the corporate prison health care provider, alleging that they have violated his constitutional rights in a number of respects by displaying deliberate neglect to his serious medical needs. Two defendants–Warden Sabol and Prime Care Inc.– have already been dismissed from this case due to the plaintiff's failure to prosecute this matter. (Doc. 32.) The final remaining defendant, Thomas Decker, the District Director of the Immigration Service, has now also moved to dismiss this complaint. (Doc. 34.) The plaintiff, in turn, has failed provide us with an address where he can be found, and numerous orders entered by this court have been returned as undeliverable. (Docs. 29, 31, 33, and 36.) In this face of this cascading array of procedural failures, we recommend that this action be dismissed.

This *pro se* civil rights action was initially brought by the plaintiff through the filing of a complaint on November 26, 2012. (Doc. 1.) As a *pro se* litigant the plaintiff was advised by this court at this outset of this lawsuit of his responsibilities in this litigation. Thus, on November 27, 2012, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 2, p.2.)

On January 30, 2013, defendant Prime Care, Inc., filed a motion to dismiss in this case. (Doc. 17.) On February 1, 2013, Warden Sabol, in turn, moved to dismiss this complaint. (Doc. 23.) Moore did not respond to these motions, and these defendants have now been dismissed from this action. (Doc. 32.) Moreover, multiple mailings from the court addressed to Moore has been returned as undeliverable. (Docs. 28, 29, 31, 33, and 36.) Thus, it is apparent that Moore is no longer accepting communications at the last address which he had provided to the court.

As a *pro se* litigant Moore's failure to maintain an address where he could be reached itself violated the rules of this court; specifically, Local Rule 83.18, which provides that:

**LR 83.18 Appearance of Parties Not Represented by Counsel.**

Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served upon such party.

It is against the backdrop of these procedural defaults by Moore that final remaining defendant, Thomas Decker, the District Director of the Immigration Service, has now also moved to dismiss this complaint. (Doc. 34.) In the absence of any timely response by the plaintiff or any means by which we can communicate with the plaintiff, we will deem the motions to dismiss to be ripe for resolution. For the reasons set forth below, we recommend that the motions to dismiss be granted.

## II. <u>Discussion</u>

### A. <u>Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted</u>

At the outset, under the Local Rules of this court the plaintiff should be deemed to concur in this motion to dismiss, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since Local Rule 7.6 of the Rules

of this court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this court's orders, by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires

that the merits of a particular dispute be placed before the court in a timely fashion ....” McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, “would actually violate the dual mandate which guides this court and motivates our system of justice: ‘that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion’.” Id. Therefore, we are obliged to ensure that one party’s refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

Further, in this case, Moore has compounded this failure by failing to provide the court with an address where he can be reached, a direct violation of Local Rule 83.18. Moore’s on-going violation of Local Rule 83.18, permits the court to find that he has abandoned this litigation. In this circumstance, dismissal of this action for failure to abide by court orders, and failure to prosecute, is fully justified. See, e.g., Kuhn v. Capitol Pavilion, 1:11-CV-2017, 2012 WL 5197551 (M.D. Pa. Oct. 19, 2012); Educ. Mgmt. Services, Inc. v. Pennsylvania, 1:10-CV-00441, 2012 WL

2389874 (M.D. Pa. June 25, 2012); <u>Olguin v. Burgerhoff</u>, 1:12-CV-0003, 2012 WL 1580935 (M.D. Pa. May 4, 2012); <u>Nowland v. Lucas</u>, 1:10-CV-1863, 2012 WL 10559 (M.D. Pa. Jan. 3, 2012); <u>Washington v. Columbia County Prison</u>, 3:CV-10-45, 2011 WL 98547 (M.D. Pa. Jan. 12, 2011).

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss, and has failed to comply with Local Rule 83.18 by providing an address where we can communicate with this litigant. These failures now compel us to apply the sanction called for under Rule 7.6 and 83.18, and deem the plaintiff to not oppose this motion to dismiss.

## B.    <u>Dismissal of this Case Is Also Warranted Under Rule 41</u>

Beyond the requirements imposed by the Local Rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain

factors, commonly referred to as <u>Poulis</u> factors.  As the United States Court of Appeals

for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." <u>Lopez v. Cousins</u>, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting <u>Briscoe v. Klem</u>, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the <u>Poulis</u> factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. <u>Mindek v. Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir.1992)." <u>Briscoe v. Klaus</u>,  538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court

in making judgments weighing these six factors, the court of appeals has frequently

sustained such dismissal orders where there has been a pattern of dilatory conduct by

a *pro se* litigant who is not amenable to any lesser sanction.  <u>See, e.g.</u>, <u>Emerson v.

Thiel College, supra</u>; <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007); <u>Reshard

v. Lankenau Hospital</u>, 256 F. App'x 506  (3d Cir. 2007); <u>Azubuko v. Bell National

Organization</u>, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis </u>factors weighs heavily in

favor of dismissing this action.  At the outset, a consideration of the first <u>Poulis</u> factor,

the extent of the party's personal responsibility, shows that the delays in this case are

entirely attributable to the plaintiff, who has failed to abide by court orders, and has

otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the

failure to abide by court orders–also calls for dismissal of this action.  Indeed, this

factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight

and careful consideration.  As the United States Court of Appeals for the Third Circuit

has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in
> support of a dismissal or default judgment." <u>Adams v. Trustees of N.J.
> Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d
> Cir.1994) (internal quotation marks and citation omitted). Generally,
> prejudice includes "the irretrievable loss of evidence, the inevitable
> dimming of witnesses' memories, or the excessive and possibly

> irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action as to defendant Decker. In such instances, the defendant is plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d

at 260-61 (some citations omitted). Here, the plaintiff has allegedly failed to exhaust his administrative remedies before filing this lawsuit and now has failed to respond to a defense motion which highlights this earlier procedural failure. The plaintiff has also failed to timely file pleadings, and has not complied with orders of the court. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such

as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at

1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

## C. The Plaintiff's Claims Fail on Their Merits

Finally, the complaint presently fails to state a claim upon which relief may be granted against the corporate defendant named in this lawsuit, Prime Care Inc. To the extent that the gravamen of this complaint is that the defendants violated the plaintiff's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's medical needs, Moore faces an exacting burden in advancing this Eighth Amendment claim. To sustain such a claim, Moore must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Moore is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison

officials that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an

inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.,</u> <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections,</u> 230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104

(1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, Moore names Thomas Decker as a defendant but his pleading contains absolutely no factual allegations relating to this defendant beyond his assertion Decker was responsible for initially incarcerating Moore at the York County Prison. In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

Thus, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was an agency supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability

for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.* See <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)." <u>Jetter v. Beard</u>, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

Here, Moore does not allege that defendant Decker directed the conduct complained of by the plaintiff, or had knowledge of that conduct and acquiesced in it. Rather, in the first instance Moore simply alleges the Decker was legally responsible

for his arrest and detention in the first instance. To the extent that Moore premises liability of this particular defendant upon the assertion that she was legally responsible for the overall operation of the institution, without setting forth any further factual basis for a claim against him in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

In sum, then, this merits analysis reveals that Decker's motion to dismiss is meritorious. Therefore, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that the plaintiff has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise

litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

## III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motions to Dismiss (Docs. 17 and 23.), be GRANTED and the plaintiff's complaint be dismissed as to defendants Mary Sabol and Prime Care, Inc.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of March 2013.

**_S/Martin C.  Carlson_**
Martin C. Carlson
United States Magistrate Judge